**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Merrill Lynch Bank USA, | ) | No. CV 09-734-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Barry Wolf; Andrew Goldstein, | ) ) | |
| Defendants. | ) ) | |
| Barry Wolf; Andrew Goldstein, | ) ) | |
| Counterclaimants, | ) ) | |
| vs. | ) ) | |
| Merrill Lynch Bank, USA, | ) ) | |
| Counterdefendant. | ) ) | |

Pending before the Court is Plaintiff/Counterdefendant Merrill Lynch Bank USA's ("Merrill Lynch") Motion to Dismiss Defendants' Fourth, Fifth, Sixth, and Seventh Counterclaims. Merrill Lynch filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court now rules on the Motion.

**I. BACKGROUND**

Defendants/Counterplaintiffs Barry Wolf and Andrew Goldstein opened Loan Management Accounts ("LMA") with Merrill Lynch, Pierce, Fenner & Smith Inc. in 2007. LMAs allow customers to obtain loans secured by the value of securities held with Merrill Lynch. In opening their accounts, Defendants signed a Merrill Lynch Loan Management

1   Application that incorporates by reference a Merrill Lynch Loan Management Account

2   Agreement ("LMA Agreement").

3     Mr. Goldstein began using his LMAs in April of 2007, and Mr. Wolf began using his

4   LMAs in November of 2007. Defendants originally opened floating rates loans, then later

5   converted a portion of those loans to fixed rate loans. In the fall of 2008, motivated by

6   historically low interest rates, Defendants decided to convert their fixed rate loans back to

7   floating rates as soon as possible.

8     In late October of 2008, Defendants began to inquire about the process for converting

9   their loans to floating rates and any breakage fees they could incur to do so. Defendants

10  received varying estimates for the amount of breakage fees. They allegedly learned for the

11  first time during this period that Merrill Lynch would assess their breakage fees based on the

12  Eurodollar Forward Swap Contract rate (the "EFSC rate"), rather than the London Interbank

13  Offered Rate ("LIBOR"). Defendants claim that, from the beginning, Merrill Lynch told

14  them that their loan rates would always be tied to LIBOR and that any potential breakage

15  fees would be calculated using LIBOR.

16    Merrill Lynch filed its Complaint for Declaratory Relief on April 9, 2009. (Doc. #1.)

17  Merrill Lynch wants the Court to determine the parties' rights and obligations under the

18  LMA Agreement, specifically the amount of breakage fees Merrill Lynch can assess against

19  Defendants/Counterplaintiffs.

20    Defendants moved to Amend their Answer to add Counterclaims on September 3,

21  2009. (Doc. #25.) The Court granted the Motion to Amend on September 30, 2009. (Doc.

22  #30.) Merrill Lynch has now moved to dismiss four of the Counterclaims added by Mr. Wolf

23  and Mr. Goldstein.

24  **II. LEGAL STANDARD**

25    **A. Rule 12(b)(6)**

26    To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the

27  requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and

28

1    plain statement of the claim showing that the pleader is entitled to relief," so that the

2    defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

3    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41,

4    47 (1957)).

5    Although a complaint attacked for failure to state a claim does not need detailed

6    factual allegations, the pleader's obligation to provide the grounds for relief requires "more

7    than labels and conclusions, and a formulaic recitation of the elements of a cause of action

8    will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations

9    of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*.

10   Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.

11   Without some factual allegation in the complaint, it is hard to see how a claimant could

12   satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also

13   'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice

14   and Procedure §1202, pp. 94, 95(3d ed. 2004)).

15   Rule 8's pleading standard demands more than "an unadorned, the-defendant-

16   unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing

17   *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will

18   not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual

19   matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*,

20   129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual content that allows

21   the court to draw the reasonable inference that the defendant is liable for the misconduct

22   alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a

23   sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts

24   that are 'merely consistent' with a defendant's liability, it 'stops short of the line between

25   possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

26   In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts

27   alleged in the complaint in the light most favorable to the drafter of the complaint and the

28

1  Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*,

2  234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true

3  a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286

4  (1986).

5  **B. Rule 9(b)**

6  Plaintiff argues that Defendants' Counterclaims for fraud (Count Four) and negligent

7  misrepresentation (Count Five) must meet the heightened pleading requirements of Federal

8  Rule of Civil Procedure 9(b). Rule 9(b) provides that when alleging fraud or mistake, a

9  "party must state with particularity the circumstances constituting fraud or mistake."

10  Rule 9(b) requires fraud allegations to be "specific enough to give defendants notice

11  of the particular misconduct . . . so that they can defend against the charge and not just deny

12  that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

13  Cir. 2009)(internal citations omitted). Allegations of fraud must include the "who, what,

14  when, where, and how" of the misconduct charged. *Id*. (internal citations omitted) "A party

15  alleging fraud must set forth more than the neutral facts necessary to identify the

16  transaction." *Id*. (internal citations omitted).

17  Rule 9(b) serves three purposes

18      (1) to provide defendants with adequate notice to
   allow them to defend the charge and deter

19  plaintiffs from the filing of complaints as a pretext
   for the discovery of unknown wrongs; (2) to

20  protect those whose reputation would be harmed
   as a result of being subject to fraud charges; and

21  (3) to prohibit plaintiffs from unilaterally
   imposing upon the court, the parties and society

22  enormous social and economic costs absent some
   factual basis.

23  *Id*. at 1125 (internal quotations omitted).

24  If fraud is not a necessary element of a claim, a party may still choose to allege that

25  the defendant has engaged in fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

26  1097, 1103 (9th Cir. 2003). If a party alleges a unified course of fraudulent conduct and

27  

28  
- 4 -

1  relies entirely on that course of conduct as the basis for a claim, then the claims is "grounded

2  in fraud" or "sounds in fraud" and the pleading of that claim as a whole must meet the

3  requirements of Rule 9(b). *Id*. at 1103-04. At other times, a party may choose to allege some

4  fraudulent and some non-fraudulent conduct in a claim. In that case, only the allegations of

5  fraud in the claim must meet the heightened pleading standards of Rule 9(b). *Id*. at 1104.

6  **III. ANALYSIS AND CONCLUSION**

7  **A. Counterclaims Six and Seven**

8  Plaintiff has moved to dismiss Counterclaims Four, Five, Six and Seven. The Court

9  will address Plaintiff's arguments regarding Counterclaims Six and Seven first because they

10  require little analysis. Counterclaim Six is denominated "Punitive Damages," and

11  Counterclaim Seven is denominated "Attorney's Fees."

12  The parties dedicate significant portions of their briefs arguing about whether Arizona

13  law allowing for attorneys' fees and punitive damages applies to this case despite the

14  existence of a choice of law provision in the LMA Agreement specifying Utah law applies.

15  The Court finds that Counts Six and Seven should be dismissed, even if Arizona law applies,[1]

16  because they are not stand alone claims; but, rather, are types of relief.

17  Defendants/Counterplaintiffs have sufficiently articulated their request for attorneys' fees

18  and punitive damages in the Prayer for Relief section of their First Amended Answer and

19  Counterclaim. The Court therefore will grant the Motion to Dismiss Counterclaims Six and

20  Seven with prejudice.

21

22

23

24

25

26

27  [1]The Court does not reach the choice of law issue at this time.

28

1          **B. Counterclaims Four and Five**

2              **1. Fraud**

3          Defendants/Counterplaintiffs concede that the heightened pleading requirements of

4    Rule 9(b) apply to their Count Four for common law fraud and intentional misrepresentation.

5    Defendants' pleading therefore must provide the "who, what, when, where, and how" of the

6    misconduct alleged.  Plaintiff argues that Defendants' Counterclaim Four lacks the required

7    specificity and cannot be cured with an amendment.

8          The Court agrees with Plaintiff that, as currently stated, Counterclaim Four does not

9    meet the pleading requirements of Rule 9(b).   The Court, however, cannot say that

10   Defendants could not possibly cure Counterclaim Four's defects with an amendment.

11         Defendants/Counterplaintiffs allege in Count Four that Merrill Lynch made

12   misrepresentations of fact or omissions of material fact to Mr. Wolf and Mr. Goldstein in

13   connection with the terms of their fixed rate LMAs.  Defendants then go on to allege all the

14   other bare elements of a common law fraud claim.   The only detail provided in the

15   allegations relates to statements allegedly made by Merrill Lynch that all interest and

16   breakage fee calculations would be based upon the LIBOR rate, which Defendants support

17   with citation to Exhibits 1 and 2 to their First Amended Answer and Counterclaim.

18         Defendants claim that they relied on the statements made in Exhibits 1 and 2, which

19   are both emails, in opening and maintaining their LMAs.  But, as Plaintiff points out, the

20   only email that actually mentions LIBOR was drafted well after Defendants opened their

21   LMAs. Defendants therefore could not have relied on the November 2008 email in deciding

22   to open the LMAs. Defendants have not identified what statements, if any, regarding the

23   LIBOR rate induced them to open the LMAs.

24         In the general allegations section of the Counterclaim, Defendants reference certain

25   marketing materials that mention LIBOR.  But Defendants have not alleged that either of

26   them actually read and relied on the materials when opening their LMAs.   Further,

27   Defendants have not identified which Merrill Lynch representatives "confirmed" for them

28

1  before they opened their LMAs that the interest rate charges would be calculated based on

2  the LIBOR rate, let alone when and where this occurred.

3        Defendants' fraud allegations simply do not meet the heightened pleading

4  requirements of Rule 9(b).  The Court therefore will grant the Motion to Dismiss

5  Counterclaim Four.

6        The Court agrees with Plaintiff that Defendants cannot use an email from November

7  of 2008 to demonstrate reliance in opening the LMAs.  But Defendants might have some

8  other allegations of misrepresentation that would provide the required specificity for their

9  fraud claim. Because Defendants might be able to cure their pleading deficiencies, the Court

10 will give them the opportunity to amend.  The Court cautions Defendants, however, that they

11 should include every specific fraud allegation that they have against Plaintiff in the amended

12 fraud Counterclaim or risk dismissal on a subsequent motion.

### 2. Negligent Misrepresentation

14       Plaintiff argues that Rule 9(b)'s heightened pleading standard applies to Defendants'

15 Counterclaim Five for negligent misrepresentation.  Defendants argue that the gravamen of

16 their negligent misrepresentation claim rests in negligence, not fraud, so Rule 9(b) does not

17 apply.

18       The Court tends to agree with Plaintiff that the gravamen of Defendants' negligent

19 misrepresentation claim sounds in fraud.  Defendants characterize the information allegedly

20 provided by Merrill Lynch as both false and highly misleading. This characterization seems

21 to indicate more than mere negligence.

22       But the Court does not need to decide at this time whether Rule 9(b) applies to the

23 negligent misrepresentation claim because the Court finds that Count Five does not satisfy

24 even the more lenient requirements of Rule 8(a)(2). Defendants do nothing more than barely

25 allege the elements of a negligent misrepresentation claim.  Rule 8(a) requires "more than

26 labels and conclusions, and a formulaic recitation of the elements of a cause of action will

27 not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  A claim, like Defendants'b

28

Counterclaim Five, that offers nothing more than naked assertions does not suffice. To survive a motion to dismiss, Defendants' Counterclaim must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949.

The Court therefore will grant the Motion to Dismiss Counterclaim Five for negligent misrepresentation. But, as with the fraud claim, the Court will give Defendants leave to amend Count Five to add sufficient factual allegations.

Accordingly,

IT IS ORDERED Granting Plaintiff/Counterdefendant Merrill Lynch Bank USA's ("Merrill Lynch") Motion to Dismiss Defendants' Fourth, Fifth, Sixth, and Seventh Counterclaims (Doc. #35). Counterclaims Six and Seven are dismissed with prejudice. Counterclaims Four and Five are dismissed with leave to amend.

IT IS FURTHER ORDERED that Defendants/Counterplaintiffs shall file their Second Amended Answer and Counterclaim within fifteen (15) days of the date of this Order. The Second Amended Answer and Counterclaim shall not contain separately numbered counterclaims for attorneys' fees or punitive damages.

DATED this 8th day of April, 2010.

James A. Teilborg
United States District Judge

- 8 -